# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| TAMMY JOANNE SCHMIDT, | |
| Plaintiff, | No. 16-CV-3017-LTS |
| vs. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | REPORT AND RECOMMENDATION |
| Defendant. | |

The claimant, Tammy Joanne Schmidt (claimant), seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. (Act). Claimant contends that the Administrative Law Judge (ALJ) erred in determining she was not disabled.

For the reasons that follow, I recommend the District Court reverse the Commissioner's decision and remand the case for further proceedings.

## I.    BACKGROUND

Claimant filed her application for DIB on March 25, 2013, alleging disability beginning February 11, 2013. (AR 181-82).[1] She subsequently amended her alleged disability onset date to March 8, 2013. (AR 57). In her DIB application, claimant alleged disability due to asthma, migraines, auto-immune disease, arthritis, borderline

---

[1] "AR" refers to the administrative record below.

osteoporosis, allergies, Clostridium difficile, high blood pressure, Graves' disease, acid reflux, and hypothyroidism. (AR 222).

Claimant was born March 9, 1958, was 56 years old at the time of the ALJ's decision, and was 54 years old at the time of the alleged onset of her disability. (AR 23, 34-35, 218). Claimant completed high school and had past relevant work experience as a cashier/customer service clerk. (AR 36-37, 223, 289).

On May 14, 2013, the Commissioner denied claimant's application, and on August 9, 2013, denied her claim upon reconsideration. (AR 14). On September 24, 2014, ALJ Jo Ann L. Draper held a hearing at which claimant and a vocational expert testified. (AR 29-60). On November 17, 2014, the ALJ found claimant was not disabled. (AR 14-23). The Appeals Council denied claimant's request for review. (AR 1). The ALJ's decision, thus, became the final decision of the Commissioner. *Sims v. Apfel*, 530 U.S. 103, 107 (2000).

On March 11, 2016, claimant filed a complaint in this Court. Doc. 2. The parties have briefed the issues, and on September 30, 2016, the Honorable Leonard T. Strand, United States District Court Judge, referred this case to me for a Report and Recommendation.

## II.     DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual has a disability when, due to his/her physical or mental impairments, he/she "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant

numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled.

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. "Substantial" work activity involves significant mental or physical activities. "Gainful" activity is work done for pay or profit, even if the claimant does not ultimately receive pay or profit.

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and medical impairments. If the impairments are not severe, then the claimant is not disabled. An impairment is not severe if it does not significantly limit a claimant's physical or mental ability to perform basic work activities. *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means having the ability and aptitude necessary to perform most jobs. These abilities and aptitudes include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. If the impairment meets or equals one

of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his/her past relevant work. If the claimant can still perform past relevant work, then the claimant is considered not disabled. Past relevant work is any work the claimant has done within the past 15 years of his/her application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. A claimant's "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks and citations omitted). The RFC is based on all relevant medical and other evidence. The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled.

Fifth, if the claimant's RFC, as determined in Step Four, will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do given the claimant's RFC, age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358 n.5 (8th Cir. 2000). The Commissioner must show not only that the claimant's RFC will allow him or her to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). If the claimant can make the adjustment, then the Commissioner will find the claimant is not disabled. At Step Five, the Commissioner has the responsibility of developing the

claimant's complete medical history before making a determination about the existence of a disability. The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

If after these five steps, the ALJ has determined the claimant is disabled, but there is medical evidence of substance use disorders, the ALJ must decide if that substance use was a contributing factor material to the determination of disability. 42 U.S.C. § 423(d)(2)(C). The ALJ must then evaluate the extent of the claimant's limitations without the substance use. *Id*. If the limitations would not be disabling, then the disorder is a contributing factor material to determining disability, and the claimant is not disabled.

### III. THE ALJ'S FINDINGS

The ALJ engaged in the five-step sequential analysis outlined above, as reflected in her written decision.

At Step One, the ALJ found claimant had not been engaged in substantial gainful activity since March 8, 2013. (AR 16).

At Step Two, the ALJ determined claimant had the following severe impairments: "asthma, degenerative disc disease, status post remote left total knee replacement, and multiple right shoulder rotator cuff tears with November 2013 arthroscopic repair." *Id*. The ALJ found claimant had four other physical impairments which the ALJ deemed not severe: borderline osteoporosis, hypothyroidism, Graves' disease, and a visual impairment. (AR 16). The ALJ also found claimant's mental impairment and alleged migraine headaches are not medically determinable impairments because there was no sufficient medical evidence supporting a finding that claimant suffered from these impairments. (AR 17).

5

At Step Three, the ALJ concluded that claimant did not have an impairment or combination of impairments that met or medically equaled in severity one of the listed impairments. (AR 17).

At Step Four, the ALJ determined claimant's RFC. The ALJ found that "claimant has the residual functional capacity to perform light work," but with certain restrictions:

> She can lift and carry 20 pounds occasionally and ten pounds frequently; can stand or walk for six hours and sit for six hours per day; can never climb ladders, ropes, or scaffolds, but can otherwise occasionally climb; can occasionally balance, stoop, kneel, crouch, crawl, and reach overhead with her right upper extremity; can tolerate occasional exposure to extreme cold and humidity; and cannot tolerate exposure to pulmonary irritants, such as fumes, odors, dusts, or gases.

(AR 18).

Based on this RFC assessment, and still at Step Four, the ALJ determined claimant was capable of performing past relevant work as a cashier and as a customer service clerk. (AR 22). The ALJ concluded, therefore, that claimant was not disabled. (AR 23). Accordingly, the ALJ did not reach Step Five to determine if there were other jobs in significant numbers in the local and national economy that the claimant could perform. (AR 22-23).

## IV. *THE SUBSTANTIAL EVIDENCE STANDARD*

A court must affirm the Commissioner's decision "if the ALJ's decision is supported by substantial evidence in the record as a whole." *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008)); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence" is "less than a preponderance, but enough that a reasonable mind might accept

it as adequate to support a decision." *Wright*, 789 F.3d at 852 (quoting *Juszczyk*, 542 F.3d at 631). The Eighth Circuit Court of Appeals has explained the standard as "something less than the weight of the evidence and allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (internal quotation omitted).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but we do not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (internal citation omitted). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quoting *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th

7

Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "simply because some evidence may support the opposite conclusion." *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011) (internal quotation marks and citation omitted). *See also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion." (internal citation omitted)).

## V. DISCUSSION

Claimant describes the two ways in which she alleges the ALJ erred as follows:

1. Substantial evidence does not support the ALJ's decision that claimant is able to perform substantial gainful activity including past work. (Doc. 13, at 5-22).

2. The ALJ committed error by not giving appropriate weight to the opinions of claimant's treating physicians. (Doc. 13, at 22-24).

In examining claimant's arguments, however, I find that she has really raised four issues. Specifically, claimant alleges the ALJ: (1) failed to give proper weight to opinions of claimant's treating physicians, especially as compared to the weight given to opinions of non-examining consultative physicians (AR 7-14; 22-24); (2) improperly evaluated claimant's credibility (AR 14-19); (3) relied upon a flawed opinion by the vocational expert (AR 19-21); and (4) improperly determined claimant's RFC with regard to her physical impairments (AR 21). Accordingly, I have organized this Report and Recommendation by addressing each of these issues, all of which fall under claimant's overall argument that substantial evidence does not support the ALJ's decision.

## A. Weight Given to Medical Opinions

Claimant argues that the ALJ gave insufficient weight to the opinions of her treating physician and gave too much weight to non-examining consultative agency physicians. Claimant argues that substantial evidence in the record as a whole does not support the ALJ's weighing of these medical opinions, and therefore, does not support her decision.

The ALJ gave "significant weight" to the opinions of non-examining state agency medical consultants Donald Shumate, D.O., and Matthew Byrnes, D.O., finding their opinions were reliable because they are familiar with the disability determination process and based their opinions on comprehensive reviews of the record. (AR 21). The ALJ also gave significant weight to the opinion of treating source Brandt Riley, D.O. *Id*. The ALJ gave little weight to treating source Gary Levinson,[2] M.D., because his opinions were "not supported by his own treatment notes" and his opinion that claimant is disabled and unable to return to her prior work is not a medical opinion. *Id*. The ALJ gave little weight to a statement by Jamie E. Brantner because "she is not an acceptable medical source" and "her assessment [was] not reasonably supported by the findings of a contemporaneous examination." *Id*. The ALJ gave no weight to Marcia E. Ring, Ph.D., because there were no treatment records in the claim file establishing a medically determinable mental impairment. *Id*. Finally, the ALJ gave little weight to a recommendation by Carrie Lankin that claimant avoid going up and down stairs because

---

[2] The ALJ misspelled his name as "Levison." (AR 21).

9

she was not an acceptable medical source and there was no evidence claimant's knee pain persisted. (AR 22).[3]

Claimant alleges that the ALJ erred in failing to give Dr. Levinson's opinion great weight, if not controlling weight. (AR 22-23). Dr. Levinson is a pulmonary specialist who treated claimant since 2005. (AR 37, 641). Dr. Levinson clearly qualifies as a treating source. *See Randolph v. Barnhart*, 386 F.3d 835, 840 (8th Cir.2004) (noting that treating source status is typically reserved for physicians who examine a claimant on more than three occasions); 20 C.F.R. § 404.1502 (defining treating sources as medical practitioners).

In evaluating the medical opinion evidence, an ALJ must first determine whether any treating-source opinion is entitled to controlling weight. 20 C.F.R. § 404.1527(c). A treating source's medical opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." 20 C.F.R. § 404.1527(c)(2). In evaluating medical opinions, "a treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight." *Ghant v. Bowen*, 930 F.2d 633, 639 (8th Cir. 1991). An ALJ must determine whether a treating opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record when evaluating a treating physician's opinion as to the nature and severity of a claim of disability. If so, the ALJ must give it "controlling weight." 20 C.F.R. § 404.1527(c)(2); *see Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015); *Reed v. Barnhart*, 399 F.3d 917, 920 (8th

---

[3] This recommendation is contained in a two-page report signed both by Carrie Lankin, a nurse, and Dr. Emil Li. Dr. Li is an acceptable medical source. As this opinion is not relevant to the issues in dispute before the Court, the ALJ's mistake here is immaterial.

Cir. 2005). The record must be evaluated as a whole to determine whether the treating physician's opinion should control. *Tilley v. Astrue*, 580 F.3d 675, 679-80; *Reed*, 399 F.3d at 920.

If a treating-source opinion is not entitled to controlling weight, then the opinion should be weighed along with the other medical-opinion evidence pursuant to the criteria set forth in 20 C.F.R. § 404.1527(c)(2).

Relevant factors include:

1. whether the expert examined the claimant;

2. whether and to what extent the expert treated the claimant;

3. whether the opinion relies upon probative evidence and provides a persuasive rationale;

4. the consistency of the opinion with the record as a whole;

5. the specialization, if any, of the medical source; and

6. any other relevant considerations, including the source's familiarity with the Commissioner's standards and the extent to which the source is familiar with the case record.

20 C.F.R. § 404.1527(c)(1)-(6). Although an ALJ's analysis must follow the controlling legal standards, "[i]t is the function of the [Commissioner] to weigh conflicting evidence and to resolve disagreements among physicians." *Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014) (second alteration in original and citation omitted); *accord Heino v. Astrue*, 578 F.3d 873, 879-80 (8th Cir. 2009). Furthermore, "[t]he interpretation of physicians' findings is a factual matter left to the ALJ's authority." *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016). "Ultimately, the ALJ must 'give good reasons' to

11

explain the weight given the treating physician's opinion." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citing 20 C.F.R. § 404.1527(c)(2)). In contrast to the opinion of a treating physician, "[t]he opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence." *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (alteration in original and citation omitted).

The ALJ afforded little weight to Dr. Levinson's opinions because the ALJ found Dr. Levinson's treatment notes did not support his opinions. Specifically, the ALJ found Dr. Levinson's "assertion that the claimant has uncontrolled asthma that is of such seriousness that she is essentially homebound" inconsistent with treatment notes because "she has not presented on exam with chronic respiratory abnormalities." (AR 21). The ALJ noted that "claimant's condition was asymptomatic during the overwhelming majority of appointments she had with Dr. Levison [sic], during which she necessary [sic] ventured into public." *Id*. Finally, the ALJ concluded that Dr. Levinson's statements that claimant is disabled and unable to return to her prior work as not deserving of weight because they are not medical opinions. *Id*.

Claimant argues the ALJ erred here because the ALJ failed to account for the improvement in claimant's condition that occurred only after Dr. Levinson told claimant she should quit her job and stay at home to avoid airborne irritants she encountered at work. The record shows that claimant's condition worsened in 2011-2012, during which time Dr. Levinson prescribed increasing dosages of steroids and other medications which carried adverse side effects and risks. (AR 38-40, 402-441, 501, 509, 642). During 2011 and 2012, claimant took many hours of sick leave because she had problems breathing. (AR 40-41, 260). Finally, Dr. Levinson advised claimant that she should quit her job in order to avoid exposure to irritants. (AR 580). Since leaving employment,

claimant remained largely housebound, limiting her exposure to irritants. (AR 42, 567, 570). As a result, her condition improved. (AR 567).

Claimant argues that the ALJ's "interpretation of the medical records was severely flawed," therefore, because the ALJ focused on records after claimant quit her job and thereby limited her exposure to irritants. (Doc. 13, at 12). I agree that the medical records certainly could be, and probably should be, interpreted in the manner claimant suggests. The ALJ did not address the change in claimant's symptoms after she left employment and her daily exposure to irritants. The ALJ's notation that claimant obviously went outside to attend her doctor's appointments reflects poor reasoning; there is an obvious, significant difference between the claimant's relatively brief exposure to irritants when attending a doctor's appointment and the exposure she would have working daily in an environment where she interacted with customers. Therefore, I find the ALJ did not provide good reasons for discounting the weight afforded to Dr. Levinson based on the medical records.

Moreover, the degree to which an opinion is consistent with an interpretation of the medical records is only one factor an ALJ should consider in determining the weight to afford a treating physician. The remaining factors, identified above, all militate in affording Dr. Levinson's opinion greater weight. Dr. Levinson examined claimant and treated her for years. Dr. Levinson's opinion was based upon probative evidence and a persuasive rationale. Dr. Levinson was a pulmonary specialist who showed familiarity with the Commissioner's standards. "Greater weight is generally given to the opinion of a specialist about medical issues in the area of specialty, than to the opinion of a non-specialist." *Thomas v. Barnhart*, 130 Fed. App'x 62, 64 (8th Cir. 2005) (unpublished per curiam) (citing 20 C.F.R. § 404.1527(d)(5); *Hinchey v. Shalala*, 29 F.3d 428, 432 (8th Cir. 1994)); *see also Qualls v. Apfel*, 158 F.3d 425, 428 (8th Cir. 1998) ("More

13

importantly, although a treating physician's opinion is considered to be significant, specialists' opinions are generally afforded more weight."). There is no indication in the ALJ's decision that she afforded Dr. Levinson's opinion any greater weight, despite his clear specialty in the very area of medicine at issue.

The Commissioner's brief fails to address any of these issues. Rather, the Commissioner's brief addresses only Dr. Levinson's conclusion that claimant was disabled and unable to work. (Doc. 14, at 13). The Commissioner correctly points out that whether the claimant is disabled is not a medical opinion and invades the Commissioner's province. *House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007) ("A treating physician's opinion that a claimant is disabled or cannot be gainfully employed gets no deference because it invades the province of the Commissioner to make the ultimate disability determination."). Thus, the ALJ did not err in disregarding this portion of Dr. Levinson's opinion. It does not, however, justify the ALJ affording little weight to the opinion of the pulmonary specialist who treated claimant for years, and affording great weight, instead, to non-examining state consultative physicians.

Accordingly, I find that the ALJ erred in affording Dr. Levinson's opinion little weight and that the ALJ should have afforded his opinion greater weight.

### B.     *The ALJ's Credibility Determination*

The ALJ found claimant was not a credible source regarding the intensity, persistence, and functionally limiting effects of her impairments. (AR 19). In assessing claimant's credibility, the ALJ referenced *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). (AR 18). In *Polaski*, the Eighth Circuit Court of Appeals identified seven factors ALJs must consider in assessing a claimant's credibility. Those factors include: (1) claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the

precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. An ALJ "need not explicitly discuss each *Polaski* factor." *Buckner v. Apfel*, 646 F.3d 549, 558 (8th Cir. 2011) (internal quotation marks and citation omitted). Rather, a court should "defer to the ALJ's credibility finding if the ALJ 'explicitly discredits a claimant's testimony and gives a good reason for doing so.'" *Id.* (quoting *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010)). The question here is whether the ALJ's credibility determination is supported by a good reason. I find it is not.

Here, the ALJ stated she was "not persuaded by the claimant's reportedly extreme limitations with regard to her activities of daily living because those assertions lack objective support and because she is a self-described 'homemaker.'" (AR 20). It appears the ALJ otherwise relied upon medical records from the time period after claimant quit her job to avoid exposure to irritants to conclude that her description of her condition and need for taking sick leave was unsupported. (AR 19-20).

When an ALJ rejects a claimant's subjective complaints, the ALJ "must make an express credibility determination detailing reasons for discrediting the testimony, must set forth the inconsistencies, and must discuss the *Polaski* factors." *Kelley*, 133 F.3d at 588. *See also Baker v. Apfel*, 159 F.3d 1140, 1144 (8th Cir. 1998) ("When rejecting a claimant's complaints of pain, the ALJ must make an express credibility determination, must detail reasons for discrediting the testimony, must set forth the inconsistencies, and must discuss the *Polaski* factors.").

> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that 'the individual's allegations have been

15

considered' or that 'the allegations are (or are not) credible.' It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

SSR 96–7p, 1996 WL 374186 (July 2, 1996), at *4.

Only where an ALJ adequately explains his or her findings on the *Polaski* factors, or the reasons for discrediting testimony in light of these factors, must a reviewing court afford the ALJ's credibility conclusions any deference. *See Jones v. Callahan*, 122 F.3d 1148, 1151 (8th Cir. 1997) ("'We will not disturb the decision of an ALJ who seriously considers, but for good reasons explicitly discredits, a claimant's testimony of disabling pain.'") (quoting *Browning*, 958 F.2d at 821); *see also Dixon v. Sullivan*, 905 F.2d 237, 238 (8th Cir. 1990) ("If an ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so, we will normally defer to that judgment.").

In this case, I find the ALJ failed to provide a good reason of sufficient detail for this Court to afford her credibility determination any deference. The ALJ did not acknowledge or explicitly recognize the change in claimant's functionality as shown in the medical records between when she worked and was exposed to irritants, and when she was no longer working and had far more limited exposure to such irritants. Although the ALJ found claimant's subjective "limitations with regard to her activities of daily living" lacked objective support, nowhere in the ALJ's decision does she discuss those daily activities or articulate the objective support that is lacking. Nor did the ALJ specifically identify any inconsistencies between claimant's subjective complaints and the

record. Ultimately, I cannot tell from the ALJ's decision what limitations of claimant's daily activities the ALJ found incredible, or exactly why the ALJ found them incredible. Nor did the ALJ mention claimant's work history, which showed she had a long history of steady work and significant earnings up until the time of the alleged onset of her disability. (AR 188-202). An ALJ should give more credibility to a claimant who demonstrates a steady work history. *See O'Donnell v. Barnhart*, 318 F.3d 811, 817 (8th Cir. 2003) (noting that claimant's 14-year work history bolstered her credibility).

Finally, the ALJ's reference to claimant being a self-described homemaker is singularly unhelpful without an explanation of what credibility inference the ALJ purportedly derived from that fact. It is possible the ALJ concluded that claimant's ability to perform the work associated with homemaking tended to show she was not disabled. *See, e.g., Cragin v. Com'n of Soc. Sec.*, No. 2:12-CV-259, 2013 WL 3716537, at *6 (D. Vt. July 12, 2013) (noting that claimant's status as a homemaker showed "she retained significant physical functioning"); *but see Hernandez v. Colvin*, No. 2:15-CV-268-JEM, 2016 WL 4506871, at *8 (N.D. Ind. Aug. 29, 2016) (criticizing the ALJ's credibility finding where the ALJ relied on a claimant's self-description as a homemaker to conclude she was not disabled because she could perform household chores). On the other hand, perhaps the ALJ concluded that claimant's self-description as a homemaker showed that she lacked a motivation to work. *See, e.g., Tanner v. Colvin*, No. 4:15-CV-27-FL, 2016 WL 626493, at *14 (E.D. N.C. Jan. 26, 2016) (holding that the ALJ did not err in finding claimant's occupation as a homemaker showed her lack of employment was not due to disability); *Nash v. Colvin*, No. 14-V-3059-FVS, 2015 WL 3935265, at *5 (E.D. Wash. June 26, 2015) (holding it was not an error for ALJ to infer claimant's occupation as a homemaker showed she was choosing to stay home to raise children instead of working). Thus, although an ALJ may draw a reasonable inference

17

from a claimant's self-description as a homemaker, the problem here is that a reviewing court has no clue what inference the ALJ drew to determine if it was a reasonable one.

Accordingly, I find the ALJ erred in failing to sufficiently articulate her credibility findings to allow for meaningful review, necessitating a remand. To be sure, the ALJ may ultimately reach the same conclusion regarding claimant's credibility on remand, but, if so, must provide an adequate explanation for that finding that a court may assess its reasonableness upon review.

### C. *The Vocational Expert's Opinion*

Claimant argues that the hypothetical posed to the vocational expert was inadequate, and therefore, the ALJ's reliance on the vocational expert's opinion fails to provide substantial evidence to support her decision. (Doc. 13, at 19-22). Specifically, claimant argues that the vocational expert "admitted that although the hypothetical said '<u>no</u> exposure to pulmonary irritants such as fumes, odors, dust or gases' there would be contact with such irritants" in a position as cashier/customer service representative. (Doc. 13, at 20) (emphasis claimant's). Further, claimant argues that the ALJ "failed to include [claimant's] frequent absenteeism due to her asthma." *Id*.

With regard to the first of claimant's alleged errors in the hypothetical, I do not find that the ALJ erred. The vocational expert did testify that if claimant could not be exposed to other irritants, such as the smell of smoke on customers' clothes and aromatic soaps, that claimant would not be able to return to her prior work. (AR 58-59). Claimant bears the burden of establishing restrictions such as these. *Yuckert*, 482 U.S. at 146 n.5. I cannot find on this record that the ALJ's hypothetical was materially lacking. The ALJ's hypothetical question to the vocational expert contained all of the limitations the ALJ found appropriate, and the vocational expert's opinion, therefore, provides substantial evidence to support the ALJ's RFC determination. *Hulsey v. Astrue*, 622

18

F.3d 917, 922 (8th Cir. 2010). On remand, however, the ALJ may reassess whether she should include claimant's absenteeism in the hypothetical. The ALJ did not include that limitation presumably because she did not give great weight to Dr. Levinson's opinion and did not credit claimant's subjective testimony that she had to miss work because of her asthma. On remand, the ALJ may determine that this limitation is warranted if she gives Dr. Levinson's opinion great weight and finds claimant more credible.

### D. *Claimant's Physical Impairments and the RFC*

Finally, claimant argues the ALJ erred by failing to provide in the RFC for her physical limitations. (Doc. 13, at 21). The ALJ found claimant could perform "light work." (AR 18). "Light work" is defined as the ability to lift up to 20 pounds occasionally and 10 pounds frequently, and the ability to stand and walk for at least six hours out of an eight-hour day. 20 C.F.R. §§ 404.1567(b). Claimant argues that, although her breathing problems are the primary source of her disability, "the evidence also establishes other physical impairments that limit [claimant's] ability to stand for more than 4-5 hours in a day or lift more than 10-15 pounds." (Doc. 13, at 21). Claimant argues that the ALJ should have limited her to sedentary work based on these physical limitations. *Id*. The Commissioner completely failed to address this argument in her brief.

Despite the Commissioner's failure to address this issue, I find there is substantial evidence in the record to support the ALJ's RFC assessment regarding claimant's physical impairments. The ALJ conducted a thorough analysis of the medical records regarding claimant's physical impairments. (AR 20). This evidence demonstrates that claimant's physical impairments were ameliorated through treatment such that she is physically capable of performing light work, her breathing problems aside.

## *VI. CONCLUSION*

For the reasons stated, I respectfully recommend the Court reverse the Commissioner's determination that claimant was not disabled and **remand** this case for further proceedings consistent with this Report and Recommendation.

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 23rd day of January, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa